### In re Mason M. BAKER, Sr. and Charlene Palmer Baker, Debtors.

Bankruptcy No. T84–30179.
Adv. No. 84–5275.

United States Bankruptcy Court,
N.D. Mississippi.

Aug. 1, 1986.

254

Falton O. Mason, Jr., Oxford, Miss., for Mason and Charlene Baker.

Allan Alexander, Patterson, Tollison & Alexander, Oxford, Miss., for H.W. Skinner and Press-Seal Gasket Corp.

OPINION

DAVID W. HOUSTON, III, Bankruptcy Judge.

At a recessed hearing, scheduled pursuant to the order of this Court, there came on for consideration the objection to confirmation of Debtors' plan, motion to dismiss, and in the alternative, motion for involuntary conversion, filed by H.W. Skinner and Press-Seal Gasket Corporation, hereinafter referred to collectively as Movants; response to said objection, etc., filed by Mason M. Baker, Sr., and Charlene Palmer Baker, hereinafter referred to as Debtors; all parties being represented by their respective attorneys of record; on proof and argument in Open Court; and the Court having heard and considered same, finds as follows, to-wit:

I.

This Court has jurisdiction of the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334 and 28

U.S.C. § 157. This matter is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(L).

## II.

Reference is hereby made to the order of this Court in the above styled bankruptcy case, dated September 11, 1985, wherein the following matters were decided, to-wit:

1. That part of the Movants' objection, etc., alleging "bad faith" because of the Debtors' charges for personal expenditures and/or the business expenses of Petro Find, Inc., was overruled.

2. That part of the Movants' objection, etc., dealing with the Debtor's non-payment of the balance of the promissory note executed in connection with the purchase of the residential dwelling from Press-Seal Gasket Corporation was overruled.

3. That part of the Movants' objection, etc., dealing with the allegations of fraud, misrepresentation, and false pretenses through the issuance of the three insufficient funds checks by the Debtor, Mason M. Baker, which were all returned unpaid, was overruled.

4. The Debtors were ordered and directed to furnish an accounting to the Movants within thirty (30) days of the date of the aforesaid order concerning all aspects of the development and operation of the Parker No. 1 Well in Richland Parish, Louisiana, including, but not limited to, an accounting of the expenses of operation, the costs of all leases, research and/or testing expenses, drilling expenses, continuing operating expenses, any and all sources of investment income generated for the installation and drilling of the well, an accounting of all production income realized from the well, as well as, the Debtors were directed to produce a copy of the division order or statement of the ownership percentages, i.e., royalty, working, or overriding royalty interests for said well.

5. The Debtors were further ordered to provide an accounting of all other ventures in which the Debtor, Mason M. Baker, participated, such as those with Joseph F. Fritz, between January 4, 1978, and May, 1981, in the same manner as outlined in the paragraph immediately preceding, including particularly the sales transactions between Petromar Properties, Inc., and Mason Baker, d/b/a Petro Find, Inc.

Although an easily comprehensible accounting was not furnished by the Debtors, the available records, supporting the income earned and expenses incurred as a result of the various oil and gas ventures, were tendered into Court. These records provide only modest insight to the profits and losses generated from the projects. However, from a review of the credible testimony taken as a whole, it is apparent that the Debtors sustained considerable overall losses, taking into account the "dry holes" offset against the only producing venture, the Parker No. 1 Well in Richland Parish, Louisiana.

## III.

At the conclusion of the earlier hearings conducted in this case, the Court noted three questions that needed to be addressed. These were: (a) should the Movants participate in the revenues derived from the Parker No. 1 Well because of the fact that Mason Baker was receiving benefits from the payment of expenses, although not a salary, at the time that he obtained the oil, gas, and mineral lease which encompasses the unit on which the Parker No. 1 Well was drilled; (b) although the ventures, other than the Parker No. 1 Well, did not make any measurable profit, what is the legal position of H.W. Skinner and/or Press-Seal Gasket Corporation as to these ventures, all of which were undertaken while Baker was on salary or was being paid his business and personal expenses by the Movants; and (c) does Baker's participation in the other ventures, particularly the Parker No. 1 Well, without the knowledge of Skinner and/or Press-Seal Gasket Corporation, constitute fraudulent conduct, as well as, the creation of an indebtedness in favor of Skinner and/or Press-Seal Gasket Corporation through "bad faith"?

At a subsequent status conference, the Court noted three other issues that required resolution. These were: (a) whether or not the Debtor, Mason Baker, owed a fiduciary duty to either the Movants or Petro Find, Inc.; (b) the liquidation of the claims allegedly owed by the Debtors to H.W. Skinner and/or Press-Seal Gasket Corporation; and (c) whether a Chapter 13 plan proposing to pay nothing to a major unsecured creditor is per se filed in "bad faith" in violation of 11 U.S.C. § 1325(a)(3)?

Each of these six issues will be addressed in this opinion.

## IV.

■ *ISSUE NO. 1: Should Skinner and/or Press-Seal Gasket Corporation participate in the revenues derived from the Parker No. 1 Well because of the fact that Baker was receiving benefits from the payment of expenses, although not a salary, at the time that he obtained the oil, gas, and mineral lease which encompasses the unit on which the Parker No. 1 Well was drilled?*—This is perhaps the most crucial issue in this case. As noted in the earlier order, the lease agreement, which encompasses the unit on which the Parker No. 1 Well was drilled, was negotiated by Baker and signed by the lessors on March 2, 1981, at a time when the Movants were still paying the business expenses of Petro Find, Inc., as well as, certain personal expenses of the Bakers. Although Baker's salary with Press-Seal Gasket Corporation had been terminated almost one year earlier, the Court notes that both Mason Baker and his wife, Charlene Baker, charged personal and/or business expenses to Press-Seal Gasket Corporation during the first six months of calendar year 1981, in an amount approaching approximately $10,000.00. (See Movants' Exhibits 8 and 9) Baker indicated that when his salary was terminated, he considered Skinner and/or Press Seal Gasket Corporation no longer parties to any new oil and gas ventures. Although the business and personal expenses charged by the Bakers are exorbitant, Baker testified that these expenses

were, compensation to him for "closing out" the earlier unsuccessful projects.

The resolution of the issue in question is not a pleasant undertaking for this Court. Throughout this proceeding, the Movants, Skinner and Press-Seal Gasket Corporation, have been confronted with a substantial burden of proof in establishing their position according to law. This issue is no different; the Movants must connect every link in the chain of evidence if they are to enjoy participation in the revenues generated by the Parker No. 1 Well. All of the necessary links, however, have not been established by the requisite quantum of proof. The Court would observe that because of the rather loose unsupervised manner in which Mason Baker operated on behalf of the Movants, that proving this case by clear and convincing evidence appears to be almost an impossible undertaking. This Court has already found that the Movants could have easily stopped at any time the "carte blanche" charging practices enjoyed by the Bakers. The effort, therefore, to equate the revocable privilege to charge personal and business expenses to a legal right for the Movants to participate in the revenues generated from the Parker No. 1 Well cannot be approved by this Court. This conclusion is supported by the fact that Skinner testified that the Movants would not elect to participate in the ventures which sustained substantial losses during this same time frame. (Parenthetically, the Court recalls that Baker testified that these losses were in the vicinity of $50,000.00.) Accordingly, this Court finds that no debt is owing by either of the Bakers to the Movants as a result of revenues generated from the Parker No. 1 Well. Other reasons supportive of this determination are discussed throughout this Opinion.

■ *ISSUE NO. 2: Although the ventures, other than the Parker No. 1 Well, did not make any measurable profit, what is the legal position of Skinner and/or Press-Seal Gasket Corporation as to these ventures, all of which were undertaken while Baker was on salary or*

*was being paid his business and personal expenses?*—The hand written document, dated January 4, 1978, stated, "It is also understood that the above listing of Petro Find projects is not meant to be all inclusive and will be up-dated every thirty days after the business structure (Corporation, Partnership or other) has been determined.". There was never any compliance with this "so called" agreement regarding the intention to update by adding additional projects. For whatever reason, the Movants undertook no measures whatsoever to insure that Baker would perform in keeping with the agreement, choosing rather to allow Baker to operate as he pleased. This manner of conduct and dealing, however cavalier, was not a short lived arrangement, but persisted from early January, 1978, through April, 1980, when Baker's salary was terminated, and then on through May, 1981, when the practice of charging business and personal expenses was terminated. In resolving *Issue No. 1*, the Court was of the opinion that there was no measure of control or supervision exercised by the Movants over Baker's activities. If the Movants were to participate in the income generated from the Parker No. 1 Well production, they should have insisted on structured agreements setting forth the extent of their rights and obligations in each project as to both income and expenses. The converse is likewise true. Should Baker wish to charge the Movants with the losses that he sustained, then he should have insisted on similar structured agreements on the front end of the unsuccessful projects. Succinctly stated, if the Movants are denied participation in the Parker No. 1 Well, they shall not be charged with losses arising in the unsuccessful ventures.

*ISSUE NO. 3: Does Baker's participation in the other ventures, particularly the Parker No. 1 Well, without the knowledge of Skinner and/or Press-Seal Gasket Corporation constitute fraudulent conduct, as well as, the creation of an indebtedness in favor of Skinner and/or Press-Seal Gasket Corporation through "bad faith"?*—This issue has been resolved in the discussions of *Issue No. 1* and *Issue No. 2*, and, as such, no further discussion is essential. However, as pointed out in the earlier order entered in this case, although the conduct of Baker can be characterized as something less than candid, the evidence has not been clear and convincing that such conduct was fraudulent.

*ISSUE NO. 4: Did the Debtor, Mason Baker, owe a fiduciary duty to either the Movants or Petro Find, Inc.?*—Mason Baker was employed principally by Skinner and/or Press-Seal Gasket Corporation, rather than by the entity, Petro Find, Inc. Although Petro Find, Inc., was a legitimate corporation, chartered in the State of Indiana, it conducted practically no formalized corporate business. (See Movants' Exhibit 15, Minutes of a Special Meeting of the Board of Directors of Petro Find, Inc., and Movants' Exhibit 16, the Petro Find, Inc., tax returns for 1979, 1980, and 1981.) Baker was designated in the corporate charter as a director of Petro Find, Inc., but he was issued no corporate stock and, from the testimony, never acted in any official corporate capacity. Although Baker testified that he had never seen the Petro Find, Inc., corporate tax returns, noted hereinabove, and was unaware of the existence of the corporate charter, as well as, any corporate minutes, he apparently did open a checking account in the name of Petro Find, Inc., at Oxford Bank and Trust Company where he deposited certain funds, the source of which is unknown to this Court. (See Movants' Exhibits 6 and 7) According to Baker, no deposits were made to this account by either Skinner or Press-Seal Gasket Corporation. Baker was never paid a salary by Petro Find, Inc., but was paid exclusively by either Press-Seal Gasket Corporation or Concrete Products Supply, Inc., another Skinner corporation. Considering the evidence presented, as well as, the actions of Baker's attorneys in attempting to verify the legal existence of Petro Find, Inc., this Court is of the opinion that Baker was not actually aware that Petro Find, Inc., had been established as a

legitimate legal entity. The agreement executed by Baker and Skinner, dated January 4, 1978, contemplated that a business entity of some description would be established under the name of Petro Find, but, as set forth hereinabove, the very basic provisions of this agreement, if it can actually be characterized as such, were not followed by either of the parties. Baker never owned a fifty percent interest in Petro Find, Inc., or any other Petro Find entity. Skinner never sought to enforce or formalize the terms of the agreement although a business relationship of some description existed between these parties for over three years.

There are obviously pluses and minuses on each side of this issue; however, from the totality of the oral and documentary proof, this Court must find that there was no fiduciary relationship in a purely legal sense between Baker and the Movants or Petro Find, Inc., created by either the agreement dated January 4, 1978, the corporate documentation of Petro Find, Inc., or the course of conduct of the parties.

*ISSUE NO. 5: The liquidation of the claims allegedly owed by the Debtors to H.W. Skinner and/or Press-Seal Gasket Corporation*—There were numerous debts allegedly owed by the Bakers to the Movants. These debts will be discussed separately, as follows:

(a) Damages incurred as a result of the alleged breach by Baker of the "Letters of Intent", dated respectively February 13, 1974, and May 1, 1976, concerning obligations related to WBJD Co., Inc.—These damages, although set forth in the complaint filed by the Movants in the United States District Court for the Northern District of Mississippi, were not aggressively litigated in this proceeding and, as such, no ascertainable damages were adduced by the proof. Consequently, there can be no liquidation of said damage claims by this Court at this time.

■ .(b) Damages resulting from the purchase and subsequent resale of the residential property, located in Oxford, Mississippi, by Press-Seal Gasket Corporation to the Bakers—The Movants have demanded damages resulting from interest accruals beginning at the time that the residential property was purchased in Oxford, Mississippi, by Press-Seal Gasket Corporation through the date of the execution of the promissory note by the Bakers, as well as, as a result of interest accruals subsequent to the execution of the promissory note. (See Movants' Exhibit 8) Although there apparently was a contract, dated April 19, 1978, executed between the Bakers and Press-Seal Gasket Corporation concerning this property, (See paragraph 42, United States District Court Complaint), this document was not introduced into evidence as proof that the Bakers had consented to pay interest on the purchase price of the residence. Likewise, the promissory note executed by the Bakers in favor of Press-Seal Gasket Corporation, dated March 10, 1981, (See Movants' Exhibit 5), contains no provision for the payment of interest. Consequently, this Court finds that the demand for interest by the Movants is not well taken and is hereby denied. The only amount due and owing by the Bakers as a result of this transaction is the balance of principal under the promissory note in the sum of $13,500.00, for which the Movants will be awarded judgment accordingly.

■ (c) The claim resulting from the issuance by Baker of the Petro Find, Inc. check, dated October 15, 1980, in the sum of $10,247.06, payable to Mason Baker, for payment of the 1978 M/C (Mastercard), returned for insufficient funds (See Movants' Exhibit 7)—The amount of this check coincides with the amount set forth on Movants' Exhibit 8, reflecting personal use of the Mastercard in 1978. The Court finds that Baker, by the issuance of this check in this amount, acknowledged his indebtedness to Skinner and/or Press-Seal Gasket Corporation. This indebtedness is not barred from collection by any applicable statute of limitations since it is founded on an instrument in writing. Consequently, the Court is of the opinion that by his own admission, Baker is justly indebted to the Movants in the sum of $10,247.06, for

which judgment will be entered accordingly.

(d) The claim resulting from the issuance of the Mason Baker Oil Properties check, dated March 27, 1982, in the sum of $10,000.00, payable to Press-Seal Gasket Corporation, for check replacement, returned for insufficient funds (See Movants' Exhibit 7) —Although it was not precisely clear from the testimony, the Court is left with the assumption that the issuance of this check was in replacement of the check in the sum of $10,247.06, discussed immediately hereinabove. Since a judgment has been awarded to the Movants for the sum of $10,247.06, a judgment on the basis of the $10,000.00, insufficient fund check would be duplicitous. Consequently, the demand for judgment on the basis of the $10,000.00, insufficient fund check will be denied.

(e) The claim resulting from the issuance by Baker of the Petro Find, Inc., check, dated May 1, 1980, in the sum of $20,000.00, payable to Press-Seal Gasket Corporation, noted as being "telephone unpaid" (See Movants' Exhibit 6)—The purpose for the issuance of this check was equally confusing as the issuance of the $10,000.00, check. However, Baker's undisputed testimony was to the effect that this check was issued in payment on the residential property obligation. Since this Court has already found that the Movants are only entitled to a judgment in the sum of $13,500.00, as a result of the acquisition of the residential property from Press-Seal Gasket Corporation, any judgment on the basis of this $20,000.00, insufficient fund check would likewise be duplicitous. Consequently, in the absence of proof to the contrary, the demand for judgment based on this check will be overruled at this time *without prejudice*. Should the Movants desire to further enlighten this Court on this point, they may elect to do so on proper motion followed by appropriate proof.

■ (f) Balance of claims appearing on Movants' Exhibit 8, as well as, claims appearing on Movants' Exhibit 9—As set forth hereinabove, the Court observes that an extremely unconventional business relationship existed between Mason Baker and the Movants over a period of several years. This relationship was not formalized by any written instruments, but developed for the most part as a matter of practice. The Movants, over a three and one-half year period, permitted the Bakers to have unrestricted access to a Mastercard, gasoline credit cards, telephone credit cards, etc., in addition to extending personal advances of cash. In the order dated September 11, 1985, the Court found that there was no legally proven fraudulent conduct on the part of the Bakers, although they certainly took advantage in egregious measures of their fortuitous circumstances. The supporting documentary evidence for practically all of these claims consists primarily of invoices from Press-Seal Gasket Corporation to Petro Find, Inc. Several of these invoices, specifically that of Coopers and Lybrand, who prepared the Petro Find, Inc., tax returns, as well as, the invoice applicable to Attorney Reed Silliman, the Indiana practitioner who incorporated Petro Find, Inc., do not appear to be billings that should be charged exclusively to Mason Baker. These might well be obligations owed by Petro Find, Inc.; but this corporation was owned exclusively by H.W. Skinner, and not Baker, who owned no interest whatsoever. According to the uncontradicted testimony, neither of the Movants made any infusions of cash into the Petro Find, Inc., bank accounts, other than "maybe" the initial $1,000.00, "start-up" contribution. Whatever moneys were in this account were apparently put there by Baker, the source of which, as mentioned hereinabove, is unknown. Baker utilized these moneys to acquire oil and gas leases so that drilling units could be organized. The payment of the Bakers' charges and the extension of personal advances by the Movants were, in the opinion of this Court, the consideration for Mason Baker's efforts which, in turn, permitted the Movants to participate in certain, but obviously not all, of the oil and gas projects negotiated by Baker. The Court sees this concept of compensation as being identical to an em-

ployer reimbursing his employee for business related expenses, or as to some of the charges, as additional salary. In either event, it is generally not contemplated that the employee should reimburse the employer because of the payment of his salary, a bonus, or for any expenses legitimately incurred. Strangely, the only documentary evidence introduced regarding the charges paid by the Movants on behalf of the Bakers was the Mastercard statement introduced by the Debtors as their Exhibit 3. This exhibit definitely indicates that a number of the charges would normally not be characterized as legitimate business expenses. However, these charges were apparently within the ordinary course of the business practices and relationship that had been adopted and followed by these parties for some time. There is no proof before the Court, other than the after the fact testimony of Mr. Skinner, that these charges were not contemplated in the ongoing arrangement existing between the Movants and the Bakers. Other than the review of this one exhibit, there is no way for this Court to discern at this time whether the expenses were incurred for business or personal purposes. Consequently, this Court is of the opinion that there has been no adequate showing of a bona fide indebtedness owed by the Bakers to the Movants concerning the balance of those amounts set forth on Movants' Exhibit 8, and those amounts set forth on Movants' Exhibit 9. As such, the demand for judgment is not well taken and is hereby denied.

Because of this conclusion, the statutory defenses raised by the Debtors, i.e., § 11-7-45 and § 15-1-29, Mississippi Code of 1972, are considered moot. Had Mason Baker admitted that he owed any other debts to the Movants, such as he did by the issuance of the insufficient funds check in the sum of $10,247.06, as discussed hereinabove, the same result would not necessarily follow and a discussion of the applicability of these Code sections would be appropriate.

As to those judgments awarded in favor of the Movants, the Court finds that Press-Seal Gasket Corporation is engaged in interstate commerce and is exempt by § 79-3-211(e), from the restrictions found in § 79-3-247, as both sections are set forth in Mississippi Code of 1972. The Movants are entitled to prosecute their lawful remedies against the Debtors in this Court.

■ *ISSUE NO. 6: Is a Chapter 13 plan proposing to pay nothing to a major unsecured creditor per se filed in "bad faith" in violation of 11 U.S.C. § 1325(a)(3).*—In their proposed Chapter 13 plan, the Debtors have indicated that they intend to pay nothing on the Movants' claims. As set forth hereinabove, the Court has found that the Debtors owe the Movants the sums of $13,500.00, and $10,247.06, both of these amounts being unsecured debts. The Debtors have indicated that they intend to pay other designated unsecured creditors 10% of the amounts claimed. Pursuant to 11 U.S.C. § 1322(b)(1), the Debtors are prohibited from unfairly discriminating against creditors of equal standing. Therefore, the proposed plan submitted by the Debtors must be modified so that this obvious discrimination might be corrected.

■ The Court has reviewed the Debtors monthly family budget which reflects total monthly income in the sum of $1,875.00, total monthly expenses in the sum of $1,250.00, and a plan payment in the sum of $625.00. These figures indicate that the Debtors have no disposable income. Although this bankruptcy case was filed five days prior to the effective date of the Bankruptcy Amendments and Federal Judgeship Act of 1984, revised § 1325(b) (11 U.S.C. § 1325(b)), is an excellent rule of thumb to determine whether a Chapter 13 plan is confirmable. This section provides the following:

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—
>
> (A) the value of the property to be distributed under the plan on account

of such claim is not less than the amount of such claim; or

(B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

(2) For purposes of this subsection, 'disposable income' means income which is received by the debtor and which is not reasonably necessary to be expended—

(A) for the maintenance or support of the debtor or a dependent of the debtor; or

(B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

The parties in this case, for unexplained reasons, elected not to address the issue of whether a "zero payment plan" is proposed per se in "bad faith". There was no testimony or evidence introduced to challenge the Debtors' monthly income or expense projections. Since the Debtors have no disposable income, their Chapter 13 plan could be confirmed provided the unfair discrimination is corrected as set forth hereinabove. The Debtors will be permitted to amend their plan in keeping with the directives set forth in this opinion within twenty (20) days from the date set forth hereinbelow. The Movants shall have ten (10) days thereafter to refile any objections not inconsistent with this Opinion.

An Order will be entered consistent with this Opinion.